**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

SECURITIES AND EXCHANGE COMMISSION,

                                    **Plaintiff,**

v.

**RONALD E. WALBLAY,**
**RYHOLLAND FIELDER, INC., and**
**ENERGY SECURITIES, INC.,**

                                    **Defendants.**
_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges as follows:

## INTRODUCTION

1.      The Commission brings this action against the Defendants for defrauding investors through the offer and sale of securities in violation of the registration and antifraud provisions of the federal securities laws.

2.      From January 2009 until November 2012, Ronald Walblay, RyHolland Fielder, Inc., and Energy Securities, Inc., raised more than $12 million from more than 195 U.S. and foreign investors through unregistered offerings in five oil and gas limited partnerships.  The purported purpose of the offerings was to fund oil and gas exploration and drilling projects in the U.S.

3.      Walblay conducted the offerings using three entities he wholly owned and controlled including Energy Securities, a registered broker-dealer until January 2012, RyHolland Fielder, the managing general partner of four of the five limited partnerships, and Oilfieldfinder, Inc., the managing general partner of the remaining limited partnership.

4.      In his role as owner and president, Walblay participated in drafting, and approved, the offering memoranda given to investors.  Walblay also approved and appeared in sales videos that RyHolland Fielder and Energy Securities distributed to investors or were available online, including on YouTube.   Additionally, Walblay drafted or approved sales brochures and projections of the taxable income and rates of return investors might expect which ranged from 0% to 2270.71% over a fifteen-year period depending upon the particular offering.  To date, no investors in any of the offerings have received the return of their principal investment, let alone any profits.  These projections lacked any reasonable basis and were based on grossly exaggerated production rates.

5.      Investors in all but one of the offerings also received sales brochures that stated RyHolland Fielder, Inc. offers "[m]illions of barrels of oil and natural gas reserves" or "[b]illions of cubic feet of natural gas reserves in place."  Walblay, RyHolland Fielder, and Energy Securities did not have any basis to tell investors that they had either millions of barrels of oil and natural gas reserves or billions of cubic feet of natural gas reserves.

6.      Walblay, RyHolland Fielder, and Energy Securities also failed to use money raised in connection with four of the offerings in accordance with the use of proceeds statements set forth in the offering memoranda.  For example, Walblay, RyHolland Fielder, and Energy Securities used millions of dollars for travel expenses, investment shows sometimes called "money shows," salaries and payroll taxes, and professional fees.

7.      Contrary to the use of proceeds statements contained in the offering memorandum, Walblay, RyHolland Fielder, and Energy Securities used money raised from investors in one of the offerings to pay for expenses incurred in connection with prior offerings conducted by Walblay, RyHolland Fielder, and Energy Securities.

2

8.      Walblay, RyHolland Fielder, and Energy Securities further failed to inform investors that contrary to provisions set forth in the offering memoranda, part of the royalty interests RyHolland Fielder as the managing general partner, was supposed to pay to landowners, assuming there was any oil or gas produced from any of the wells drilled in the offerings, instead was paid to RyHolland Fielder, Walblay's family partnerships, employees, and certain investors who purchased a large number of units in the partnerships.  Walblay, RyHolland Fielder, and Energy Securities failed to disclose these payments to investors.

9.      Through this conduct, Walblay, RyHolland Fielder, and Energy Securities violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 17 U.S.C. §§ 77e(a), 77e(c), and 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.  Walblay also aided and abetted RyHolland Fielder and Energy Securities violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.  As a result, the Commission respectfully requests declaratory relief, a permanent injunction, disgorgement, and civil penalties as to all the Defendants.

## DEFENDANTS

10.     Walblay resides in Delray Beach, Florida.  During the relevant period Walblay was the sole owner and officer of Energy Securities, RyHolland Fielder, and Oilfieldfinder.  He holds Series 22, 39, and 63 licenses.  On February 8, 2012, FINRA issued a disciplinary complaint against Walblay for failing to respond to requests for testimony related to FINRA's interest in this matter and thus violating FINRA Rule 8210.  On November 1, 2012, a hearing panel decision granted FINRA Department of Enforcement's Motion for Summary Disposition,

barring Walblay from association with any FINRA member in any capacity for failing to appear for testimony. Walblay's appeal of that decision is pending.

11.     RyHolland Fielder, Inc. is a Wyoming corporation formed in May 2005 with its principal place of business in Fort Lauderdale, Florida. RyHolland Fielder serves as the managing general partner to Basin Oil, L.P., Basin Oil HV, L.P., Great Plains Oil, L.P., and Permian Basin Oil, L.P. Walblay is the President, Secretary, Treasurer, and owner of RyHolland Fielder.

12.     Energy Securities, Inc. is an Illinois corporation that operated as a broker-dealer headquartered in Boca Raton, Florida. Walblay is the President, Chief Executive Officer, and Chief Compliance Officer of Energy Securities, and its sole owner since 2007. Energy Securities filed a request for withdrawal of its registration as a broker-dealer on November 22, 2011. The SEC deemed the withdrawal effective on January 21, 2012, and FINRA did so on January 23, 2012.

## RELATED PARTIES

13.     Basin Oil, L.P. is a Tennessee limited partnership formed to drill, complete, and operate five wells in Illinois, Indiana, Kentucky, Tennessee, West Virginia, or Texas. RyHolland Fielder serves as the managing general partner. The offering consists of 100 partnership units offered at $17,500 per unit, and the offering period commenced on January 1, 2009. Depending upon the number of wells completed, if any, an investor could potentially pay up to $17,500 in addition to his initial investment.

14.     Basin Oil HV, L.P. is a Tennessee limited partnership formed to drill, complete, and operate five wells in Illinois, Indiana, Kentucky, Tennessee, West Virginia, or Texas. RyHolland Fielder serves as the managing general partner. The offering consists of 100

4

partnership units offered at $17,500 per unit, and the offering period commenced on January 1, 2009. Depending upon the number of wells completed, if any, an investor could potentially pay up to $17,500 in addition to his initial investment.

15.     Great Plains Oil, L.P. is a Tennessee Limited Partnership formed to drill, complete, and operate six oil wells in Illinois, Kansas, Kentucky, Nebraska, Tennessee, or Texas. RyHolland Fielder serves as the managing general partner.   The offering consists of 100 partnership units offered at $19,800 per unit, and the offering commenced on January 30, 2010. Depending upon the number of wells completed, if any, an investor could potentially pay $19,800 in addition to his initial investment.

16.     Permian Basin Oil, L.P. is a Tennessee Limited Partnership formed to drill, complete, and operate seven oil wells in Kansas, Nebraska, or Texas.  RyHolland Fielder serves as the managing general partner.   The offering consists of 100 partnership units offered at $24,500 per unit, and the offering commenced on August 10, 2010.  Depending upon the number of wells completed, if any, an investor could potentially pay up to $24,500 in addition to his initial investment.

17.     Texas Permian Oil, LLLP is a Florida Limited Partnership formed to drill, complete, and operate seven oil wells in Kansas or Texas.  Oilfieldfinder, Inc. serves as the managing general partner.  The offering consists of 100 partnership units offered at $20,000 per unit, and the offering commenced on September 30, 2012.  Depending upon the number of wells completed, if any, an investor could potentially pay up to $15,000 in addition to his initial investment.

18.     Oilfieldfinder, Inc. is a Nevada corporation that Ronald Walblay formed in 2012. Walblay is the President and owner of Oilfieldfinder.  Its principal place of business is in

Fort Lauderdale, Florida.   Oilfieldfinder serves as the managing general partner to Texas Permian Oil.

**JURISDICTION AND VENUE**

19.        The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); and Sections 21(d), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

20.        The Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because many of the Defendants' acts constituting violations of the Securities Act and the Exchange Act occurred in the Southern District of Florida.  In or about May 2011, Walblay moved the operations of RyHolland Fielder and Energy Securities from Tennessee to Florida.  Further, in or about March 2009, Walblay moved his personal residence from Brentwood, Tennessee to Delray Beach, Florida.  While the operations were located in Florida, Walblay, RyHolland Fielder, Energy Securities and Oilfieldfinder continued to sell interests in the limited partnerships.

21.        The Defendants, directly and indirectly, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

**THE DEFENDANTS' FRAUDULENT OFFERING
AND SALE OF SECURITIES**

**A. Background**

22.        From approximately January 2009 until November 2012, Walblay, RyHolland Fielder, and Energy Securities raised more than $12 million from more than 195 U.S. and foreign

6

investors through unregistered offerings in five oil and gas limited partnerships.  The following chart summarizes certain key facts for each offering:

| Offering | Approximate Dates of the Offering | Maximum Offering Amount | Approximate Amount of Money Raised | Approximate Number of Investors |
|---|---|---|---|---|
| Basin Oil | 1/1/2009 to 1/2010 | $3,500,000 | $2,750,000 | 64 |
| Basin Oil HV | 8/1/2009 to 8/2010 | $3,900,000 | $3,400,000 | 51 |
| Great Plains Oil | 1/30/2010 to 3/2011 | $3,960,000 | $3,200,000 | 52 |
| Permian Basin Oil | 8/10/2010 to 7/2012 | $4,900,000 | $2,900,000 | 33 |
| Texas Permian Oil | 9/30/2012 to 11/2012 | $3,500,000 | $20,000 | 1 |

23.     No registration statements were filed for any of the limited partnerships.

24.     Walblay formed and exclusively owns RyHolland Fielder, Energy Securities, and Oilfieldfinder.  In addition to owning RyHolland Fielder, Energy Securities, and Oilfieldfinder, Walblay is an executive and controls the entities and their general affairs, including supervising employees and oil and gas operations.  Energy Securities served as the broker-dealer and exclusively sold oil and gas limited partnerships created by Walblay. RyHolland Fielder operates as the managing general partner of the oil and gas limited partnerships except for Texas Permian Oil, where Oilfieldfinder is the managing general partner.

25.     Walblay drafted, approved, or authorized the use of the offering memoranda for all of the limited partnerships sold by RyHolland Fielder, Energy Securities, and Oilfieldfinder.  Walblay also drafted, approved, or authorized the use of sales brochures and projections called "Guesstimates of Taxable Income and Rate of Returns" for all of the limited partnerships sold by RyHolland Fielder and Energy Securities, except Texas Permian Oil.

Finally, Walblay authorized and appeared in sales videos available online, including on YouTube, that promoted RyHolland Fielder, Oilfieldfinder, and the offerings, including Permian Basin Oil and Texas Permian Oil.

## B. The Sales Process

26.     Walblay, and two salesmen, who were employed by both Energy Securities and RyHolland Fielder, primarily solicited investors through investment shows, sometimes referred to as "money shows."  Most of the investment shows took place in the United States; however, some were also held in the United Kingdom, Canada, Hong Kong, and the Bahamas. The investment shows were open and advertised to the general public.  Investors did not have to be accredited to attend the investment shows.

27.     At the investment shows, either Walblay or one or both of his salesmen would typically have a booth.  When investors approached the booth and expressed interest in the oil and gas limited partnerships sold by RyHolland Fielder and Energy Securities, Walblay or his two salesmen would describe the investment and provide the investors with offering materials and sales brochures.  If a prospective investor had expressed interest, but had not yet signed the subscription agreement before the conclusion of the investment show, the salesmen would follow up with phone calls or send the sales materials and offering brochures to them.

28.     In addition, at the investment shows, Walblay or one of the two salesmen would typically give a PowerPoint presentation providing further detail regarding the limited partnerships to potential investors.

29.     Many investors learned of RyHolland Fielder and Energy Securities through the investment shows.  Others were referred by friends or family who had attended investment

shows.  Additionally, many investors had no prior relationship with Walblay, RyHolland Fielder, or Energy Securities prior to purchasing interests in the limited partnerships.

30.      RyHolland Fielder and Oilfieldfinder also had websites promoting the offerings to potential investors.  Walblay appeared in sales videos available to the general public and posted on YouTube and other websites promoting the offerings.

31.      In or about 2010, Energy Securities and RyHolland Fielder used a call room where other temporary salespeople would cold-call investors.

32.      Later, Oilfieldfinder, and another salesman sold a unit in the final offering, Texas Permian Oil, after cold calling investors.

33.      In each of the limited partnerships, there was at least one unaccredited investor.  Some investors informed the salesmen they were not accredited investors, but the salesmen told them to sign forms stating they were accredited nevertheless.

34.      Walblay, RyHolland Fielder, and Energy Securities did not ask some investors any due diligence questions regarding whether they had sufficient assets or income to meet the accreditation standard.

35.      Many of the investors had not previously invested in oil and gas wells, and otherwise were not financially sophisticated.

### C.  The Limited Partnerships and the Offering Memoranda

36.      An investor who purchased a unit in one of the partnerships was obligated to make payments in a two-step process.  The first step was to provide the first installment of the investment to fund the drilling and testing of the wells.  The investment entitled the investor to a pro rata share of the net revenue interest of the wells in the partnership assuming there was oil or gas production.  Each partnership drilled multiple wells, but none of the offering materials

definitively identified the number of wells that would be in a partnership or where the wells would be located. Rather, the offering materials only identified potential states where the wells would be located.

37.     Upon completion of the drilling and testing, RyHolland Fielder, as managing general partner, would determine whether a well should be completed. If RyHolland Fielder determined a certain number of wells in the offering should be completed, it would notify investors that the completion funds were due. The offering memoranda set forth formulas used to calculate the total amount of completion funds required of investors based upon RyHolland Fielder's decision as to how many wells would be completed in that particular offering.

### D. Material Misrepresentations and Omissions and Scheme to Defraud

38.     In connection with the offering of securities during the relevant period, the Defendants made numerous material misrepresentations and omissions to investors.

#### 1. Baseless Projections

39.     When investors received the partnerships' offering materials, included in the materials was a "Guesstimate of Taxable Income and Rate of Return" projection. Walblay approved the use of the projections. These materials contained either four or five separate projected return scenarios. The scenarios projected annual and cumulative rates of return for fifteen years. The following chart provides excerpts from the five scenarios provided in connection with the Great Plains Oil offering:

|  | Cumulative Return of Capital Year 1 | Cumulative Return of Capital Year 2 | Cumulative Return of Capital Year 3 | Cumulative Return of Capital Year 4 | Cumulative Return of Capital Year 5 | Cumulative Return of Capital Year 15 |
|---|---|---|---|---|---|---|
| Scenario 1 | 262.89% | 459.40% | 646% | 823.20% | 991.47% | 2270.71% |
| Scenario 2 | 196.09% | 342.49% | 481.50% | 613.49% | 738.79% | 1690.54% |
| Scenario 3 | 103.84% | 181.06% | 254.34% | 323.88% | 389.86% | 889.35% |
| Scenario 4 | 38.31% | 66.38% | 92.97% | 116.15% | 142.00% | 320.23% |
| Scenario 5 | 0% | 0% | 0% | 0% | 0% | 0% |

40.     The Guesstimates of Taxable Income and Rate of Return varied depending upon the partnership. RyHolland Fielder and Energy Securities gave investors these projections in connection with all of the offerings, except Texas Permian Oil.

41.     The projections contained in the Basin Oil sales materials predicted returns of 0% to 2113.82%; Basin Oil HV and Permian Basin Oil sales materials predicted returns of 0% to 1681.5%.

42.     Also, in a video publicly available online promoting the Permian Basin Oil offering, Walblay is clearly shown holding a "Guesstimate" as part of the offering materials, and the numbers are visible in the video. Notably, in the video Walblay fails to show the scenario that envisions zero returns.

43.     RyHolland Fielder and Energy Securities salesmen also made various oral statements regarding the potential returns that investors could expect based on returns other investors had received previously in connection with prior offerings sold by Walblay. For example, one salesman told one investor that Walblay's worst performing partnership had paid back investors their principal investment in seven years. Another investor was told by a

salesman that the time period for return of his principal investment was three and a half years. The salesmen repeated what Walblay had told them.

44.     These projections were wholly speculative and baseless.  In fact, none of the offerings sold by RyHolland Fielder, including offerings sold prior to 2009, has ever returned investors their principal investment, let alone provided any investors with profit.

### 2. *Misleading Sales Materials*

45.     In connection with all of the offerings except Texas Permian Oil, RyHolland Fielder and Energy Securities gave investors sales brochures.  Walblay approved and authorized the use of the sales brochures.  Like the Guesstimate of Taxable Income and Rates of Return, the sales brochures had slight variations depending upon the limited partnership.

46.     Each of the sales materials contained a page that stated "What We Offer." Below that statement, it stated either "[m]illions of barrels of oil and natural gas reserves" or "[b]illions of cubic feet of natural gas reserves in place" depending upon the particular sales brochure.

47.     As stated previously, none of the offerings sold by RyHolland Fielder, including those sold prior to 2009, has ever returned investors their principal investment let alone provided any investors with profit.

48.     Further, none of the wells in any of the offerings sold by RyHolland Fielder produced billions of cubic feet of natural gas reserve or millions of barrels of oil and natural gas. Walblay knew he had no basis to tell investors that the wells he was drilling for RyHolland Fielder had billions of cubic feet of natural gas reserve or millions of barrels of oil and natural gas.

49.     Additionally, under the heading "What We Offer," the sales brochures stated "low risk infield drilling." This statement was false and misleading. Oil and gas records from the State of Kansas reveal that some of the wells drilled by RyHolland Fielder were "wildcat wells," in other words, drilled in an area not previously known as productive. Therefore, the drilling conducted by RyHolland Fielder was speculative.

50.     Walblay knew the statements in the sales brochures distributed by RyHolland Fielder and Energy Securities that the RyHolland Fielder offered low-risk infield drilling was inaccurate because no investors of RyHolland Fielder, including offerings prior to 2009, ever received the return of their principal investment, let alone their profit. He also knew that oil and gas drilling is speculative. He further knew that some of the wells that were drilled were wildcats, and therefore, by their very nature were speculative and risky.

### 3. *Improper Use of Proceeds*

51.     Walblay had the authority and control over how the money was spent in the offerings.

52.     Walblay, RyHolland Fielder, and Energy Securities misused the offering proceeds in each of the offerings, except Texas Permian Oil. Each offering memorandum for all the limited partnerships contained specific use of proceeds statements identifying how RyHolland Fielder as the managing general partner, would use the proceeds from each of the offerings including but not limited to: leasehold costs, organizational and offering costs, brokerage fees, and drilling and testing costs. For example, the Permian Basin Oil offering included the following breakdown:

Use of Proceeds

|  | Amount | % |
|---|---|---|
| A. Leasehold Costs | $245,000 | 10.0% |
| B. Organizational and Offering Costs | $61,250 | 2.5% |

| | | |
|---|---|---|
| C. Brokerage Fees | $122,500 | 5.0% |
| D. Drilling and Testing Costs | $2,021,250 | 32.5% |
| E. Completion Costs | $2,205,000 | 45.0% |
| F. Brokerage Fees | $245,000 | 5.0% |

53.     Investors' money raised from each of the offerings was initially deposited into separate escrow accounts. The money was held in escrow until 50% of the offering was sold. Once escrow was broken, RyHolland Fielder and Walblay transferred the offering proceeds to an account set up for each respective limited partnership. From the partnerships' accounts, RyHolland Fielder and Walblay transferred the money into RyHolland Fielder accounts. Walblay, RyHolland Fielder, and Energy Securities conducted multiple offerings at the same time period. Walblay and RyHolland Fielder commingled investors' money from the separate offerings into the RyHolland Fielder accounts. Walblay, RyHolland Fielder, and Energy Securities paid expenses related to the separate limited partnerships out of the RyHolland Fielder accounts. Walblay was a signatory on RyHolland Fielder's bank accounts and signed most of the RyHolland Fielder checks paying for expenses.

54.     As stated above, each of the offering memoranda contained a use of proceeds statement informing investors how the offerings proceeds would be spent in connection with the particular limited partnership. However, Walblay, RyHolland Fielder, and Energy Securities spent significant amounts of investors' money in a manner that was inconsistent with the use of proceeds statements.

55.     For example, as described above, the offerings were typically sold through the use of investor shows sometimes known as "money shows." Walblay and representatives of RyHolland Fielder and Energy Securities attended these shows to solicit investors. Walblay, RyHolland Fielder, and Energy Securities used offering proceeds to pay $15,000 to $40,000 to attend each investment show. In total, between 2009 and 2012, Walblay, RyHolland Fielder, and

Energy Securities spent approximately $1.042 million of investor funds to attend money shows and on other marketing expenses.

56.    In addition, the investment shows were located all over the country and overseas.  Walblay, RyHolland Fielder, and Energy Securities used approximately $530,000 of investors' funds for travel expenses.

57.    The use of proceeds statement did not disclose that Walblay, RyHolland Fielder, and Energy Securities would use offering proceeds to pay for money shows or travel.

58.    From 2009 to 2012, Walblay and RyHolland Fielder used investor proceeds to pay salaries and payroll taxes totaling approximately $1.25 million.  Of that money, Walblay received more than $640,000 in compensation from RyHolland Fielder.  None of the offering memoranda contained any disclosures regarding the payments for salaries, except the Texas Permian Oil offering.  In addition, from 2009 to 2011, Walblay paid himself more than $108,000 from Energy Securities.

59.    Walblay, RyHolland Fielder, and Energy Securities also directly used investor proceeds to pay professional fees totaling approximately $480,000, including money Walblay, RyHolland Fielder, and Energy Securities used to retain attorneys.  None of the offering memoranda contained any disclosures regarding the payment of professional fees such as attorneys' fees.

60.    As previously described, the offering memoranda contained specific use of proceeds statements that stated money would be used for leasehold costs, organizational costs, brokerage fees, drilling and testing costs, and completion costs.  The offering materials misstated how investors' money would be used by RyHolland Fielder as managing general partner, and did

not disclose that Walblay, RyHolland Fielder, and Energy Securities would use investments to pay these other expenses.

### 4. *Use of Offering Proceeds to Pay for Expenses from Prior Offerings*

61.     By the end of February 2011, the cumulative balances of the RyHolland Fielder bank accounts had dwindled to approximately $100,000.  On March 8, 2011, Walblay wrote a check from the new offering, Permian Basin Oil, to RyHolland Fielder's account of more than $1.19 million.

62.     To conceal from investors that Walblay, RyHolland Fielder, and Energy Securities had improperly used the offering proceeds to pay for money shows, travel, professional fees, and salaries, among other expenses, and was now lacking money to pay expenses related to those offerings, Walblay and RyHolland Fielder used the money from the Permian Basin Oil offering to cover the shortfall.

63.     During March 2011, Walblay and RyHolland Fielder spent approximately $585,000 from the RyHolland Fielder checking accounts paying expenses incurred in prior offerings including wells drilled for prior offerings.  Of the approximate $585,000 that Walblay and RyHolland Fielder spent, approximately $102,000 of the proceeds was paid by check signed by Walblay to a family partnership identified as "Walblay Partnership #1."  Walblay and RyHolland Fielder had insufficient funds to cover the expenses and thus used the Permian Basin Oil offering proceeds to cover the shortfall.

64.     The offering memorandum for Permian Basin Oil failed to disclose that Walblay and RyHolland Fielder would use investors' funds to pay for liabilities or debts incurred in connection with prior offerings sold by Walblay, RyHolland Fielder, or Energy Securities.

### 5. *Undisclosed Compensation*

65.    Each of the offering memoranda contained a statement regarding the "Participation in Ownership and Production Revenues" setting forth how net revenue interest and royalty interests would be paid to investors and others to the extent there was any oil or gas produced from any of the wells drilled in the offerings.   The offering memoranda stated "Landowner[s], R.I. [Royalty Interest], Heirs, Land Agent, or O.R.I. [Overriding Royalty Interest]" would receive either 20 or 25% of the gross production of the wells depending upon the particular limited partnership.

66.    In fact, in each of offerings, except Texas Permian Oil, Walblay and RyHolland Fielder gave a portion of the 20 or 25% to RyHolland Fielder, Walblay's family partnerships, employees, and certain investors who purchased a large number of units in the partnerships. The offering materials did not disclose these payments to investors.

67.    In contrast, Walblay or RyHolland Fielder and Energy Securities' salesmen told investors that in order to get the most valuable pieces of property with the most likelihood of drilling success they had to pay the landowners a larger overriding royalty interests.  Again, the salesmen merely repeated what Walblay had told them.  In fact, the additional overriding royalty interests did not go to the landowners, and Walblay, RyHolland Fielder, and Energy Securities never disclosed to investors that they gave additional compensation to RyHolland Fielder, Walblay's family partnerships, employees, and certain investors.

### 6. *Walblay's Ownership in the Limited Partnerships*

68.    RyHolland Fielder and Energy Securities' salesmen told some investors that Walblay purchased 10 or 20 units in a partnership.  The statements led investors to believe

17

Walblay owned a substantial stake in each offering and had "skin in the game." The salesmen merely repeated what Walblay had told them regarding his ownership.

69.     However, RyHolland Fielder's records reveal Walblay or RyHolland Fielder in fact only purchased a few units in each partnership.

### 7. *Video Promoting Texas Permian Oil*

70.     In a YouTube video that Walblay authorized to be placed online soliciting investments for the Texas Permian Oil offering, Walblay stated that in 1991 he drilled a well named C.E. Skull located in Texas that produced more than 100,000 barrels of oil in less than 45 days. This statement is false and misleading.

71.     Records from the Texas Railroad Commission reveal the well only produced 29,064 in the first three months. Further, the records reveal from the time the well was drilled in 1991 to the present, it has never produced 100,000 barrels of oil.

### CLAIMS FOR RELIEF

### COUNT I

### VIOLATIONS OF SECTIONS
### 5(a) AND (c) OF THE SECURITIES ACT

### (As to All Defendants)

72.     The Commission repeats and realleges Paragraphs 1 through 37 of this Complaint as if fully set forth herein.

73.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint, and no exemption from registration existed with respect to these securities and transactions.

74.     From January 2009 through November 2012, Walblay, RyHolland Fielder, and Energy Securities, directly or indirectly:  (a) made use of the means or instruments of

transportation or communication in interstate commerce or of the mails to sell securities as described herein, through the use or medium of a prospectus or otherwise; (b) carried securities or caused such securities, as described herein, to be carried through the mails or in interstate commerce, by means or instruments of transportation, for the purpose of sale or delivery after sale; or (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails offer to sell or offer to buy through the use or medium of any prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the Commission as to such securities.

75.     By reasons of the foregoing, Walblay, RyHolland Fielder, and Energy Securities violated and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and (c) of the Securities Act, 17 U.S.C. § 77e(a) and (c).

**COUNT II**

**FRAUD IN VIOLATION OF
SECTIONS 17(a) OF THE SECURITIES ACT**

**(As to All Defendants)**

76.     The Commission repeats and realleges Paragraphs 1 through 71 of this Complaint.

77.     From January 2009 through November 2012, Walblay, RyHolland Fielder, and Energy Securities directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading;

or (c) engaged in transactions, practices and courses of business which operated and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

78.     By reason of the foregoing Walblay, RyHolland Fielder, and Energy Securities violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

**COUNT III**

**FRAUD IN VIOLATION OF SECTION 10(b) OF THE
EXCHANGE ACT AND RULE 10b-5 THEREUNDER**

**(As to All Defendants)**

79.     The Commission repeats and realleges Paragraphs 1 through 71 of this Complaint.

80.     From January 2009 through November 2012, Walblay, RyHolland Fielder, and Energy Securities directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully or recklessly; 1) employed devices, schemes or artifices to defraud; 2) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or 3) engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities and will operate as a fraud upon the purchasers of such securities.

81.     By reasons of the foregoing, Walblay, RyHolland Fielder, and Energy Securities, directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

## COUNT IV

## AIDING AND ABETTING VIOLATIONS OF SECTION 10(b)
## OF THE EXCHANGE ACT AND RULE 10b-5 THEREUNDER

### (As to Walblay)

82.     The Commission repeats and realleges Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

83.     From January 2009 through November 2012, RyHolland Fielder and Energy Securities directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly 1) employed devices, schemes or artifices to defraud; 2) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or 3) engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities and will operate as a fraud upon the purchasers of such securities.

84.     Walblay from January 2009 through November 2012, directly and indirectly, had a general awareness that he was part of an overall activity that was improper or illegal and knowingly, or acting extremely recklessly in not knowing, provided substantial assistance to violations by Energy Securities and RyHolland Fielder of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

85.     By reason of the foregoing, Walblay directly or indirectly violated, and unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

<u>COUNT V</u>

**VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE
ACT AND RULE 10b-5 THEREUNDER BY WALBLAY AS A
CONTROL PERSON UNDER SECTION 20(a) OF THE EXCHANGE ACT**

**(As to Walblay)**

86.     The Commission repeats and realleges Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

87.     From January 2009 through November 2012, Walblay has been, directly or indirectly, a control person of Energy Securities and RyHolland Fielder for purposes of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

88.     From January 2009 through November 2012, Energy Securities and RyHolland Fielder, while being under the control of Walblay, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully or recklessly; 1) employed devices, schemes or artifices to defraud; 2) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or 3) engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities and will operate as a fraud upon the purchasers of such securities.

89.     As a control person of Energy Securities and RyHolland Fielder, Walblay is jointly and severally liable with and to the same extent as Energy Securities and RyHolland Fielder for their violations of Section 10(b) and Rule 10b-5 of the Exchange Act.

90.     By reasons of the foregoing, Walblay directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests the Court:

### Declaratory Relief

Declare, determine and find that the Defendants have committed the violations of the federal securities laws alleged in this Complaint.

### Permanent Injunction

Issue a Permanent Injunction restraining and enjoining Walblay, Energy Securities, RyHolland Fielder, and, their officers, agents, servants, employees, attorneys, representatives, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act;

### Disgorgement with Prejudgment Interest

Issue an Order directing Walblay, RyHolland Fielder, and Energy Securities to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### Civil Money Penalties

Issue an Order directing Walblay, RyHolland Fielder, and Energy Securities to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

<u>**Retention of Jurisdiction**</u>

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application of motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

September 26, 2013

By: _____

Christine Nestor
Senior Trial Counsel
Fla. Bar No. 597211
nestorc@sec.gov
Direct Dial: (305) 982-6367
Facsimile: (305) 536-4154

Jenny Trotman
Senior Counsel
NY Bar No. 4507133
Special Bar ID for the S.D. Fla. No. A5501913
trotmanj@sec.gov
Direct Dial: (305) 982-6379

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300